JOHN H. BONN, PLAINTIFF, v. ERNEST STEIGER, DEFENDANT.

*Action for an accounting in equity—when the court will allow damages for a failure of the defendant to perform the contract to be recovered on—when the findings of the court should follow the allegations of the complaint.*

On December 21, 1871, the plaintiff and the defendant entered into a written agreement, by which the latter was made the sole general agent for the sale of an encyclopedia, then being published by the plaintiff, upon the terms

therein specified, the defendant agreeing that, after its completion he would "take on an average at least one thousand copies of the entire work annually until the expiration of this agreement." Subsequently, a verbal agreement was made by which the defendant agreed to print the work, the plaintiff simply furnishing the manuscript on plates, ready for the press.

This action was brought by the plaintiff to compel the defendant to account for the books printed and sold by him under the contract, the plaintiff alleging that the number of the books so printed and sold was unknown to him, and also to compel him to pay the agreed price for at least one thousand copies a year, though the number actually sold might have been less than that number.

The court directed an interlocutory judgment for an accounting to be entered, but refused to allow the plaintiff to recover in this action for a failure of the defendant to take the number of copies specified in the agreement.

*Held*, that this was error; that the plaintiff was entitled, as an incident to the accounting, to charge the defendant in this action with the number of copies he had agreed to take. (BRADY, J., dissenting.)

When an action is tried before the court without a jury, upon an admission that the allegations of the complaint are true, and no evidence is given by either party, the findings of the court should not deviate from the allegations of the complaint, either affirmatively or negatively.

MOTION for a new trial, by the plaintiff, after the entry of an interlocutory judgment herein.

This was an equitable action for an accounting, and for other relief connected therewith, growing out of a written agreement entered into between the plaintiff and the defendant on December, 21, 1871, and a subsequent oral agreement concerning the printing, agency and sale of a German-American Cyclopedia called "Deutsch-Americanisches Conversations Lexicon," which was then being published in numbers by the plaintiff.

By the written agreement the defendant was made the sole general agent for the sale of the Lexicon; the selling price of each number and volume and the amount to be paid to the plaintiff being fixed thereby. It contained among others the following clause:

"E. Steiger to take at least five thousand copies altogether of each number of the work, published in the year 1872 (provided that from accurate and complete lists of subscribers, agents, canvassers and other purchasers of the work, which lists J. H. Bonn agrees to furnish, it appears that no less than five thousand and five hundred copies are being *bona fide* sold at present, that is, of the fifth volume), and to take at least six thousand copies of each

number of the work, published after the first of January, 1873, until its completion, and thereafter to take on an average at least one thousand copies of the entire work annually until the expiration of this agreement." It further provided, among other things, that the defendant should pay on the 5th and 20th days of each month for all stock ordered and received since the preceding settlement, and should pay for all advertising and other expenses incurred by him for furthering the sale of the work; that the plaintiff should furnish to the defendant the supply needed of the edition in numbers at or before the regular publication days, to wit, the 1st and 15th days of every month; that the defendant should have the control of every matter pertaining to the sale of the work, and that he or his successors in business should retain the sole general agency under the conditions therein mentioned until the first day of January, 1882; that the agency should not be transferable during the lifetime of the defendant, except with the consent of the owner or owners of the work, and that the list of subscribers should be the property of the owner or owners of the work.

In pursuance of this written agreement the plaintiff, on December 30, 1871, delivered to the defendant an accurate and complete list of subscribers and purchasers of the said work, whereby it appeared that more than four thousand five hundred copies were then being *bona fide* sold. At the same time the defendant proposed to the plaintiff that he would himself take charge of the getting up of the mechanical part of the said work, leaving to the plaintiff only the furnishing of the manuscript on plates ready to be printed from, and that he, the defendant, would himself furnish the necessary stock or copies, of the said work at rates not to exceed $5\frac{22}{100}$ cents for each separate number, and $4\frac{56}{100}$ cents for each number bound in volumes. The plaintiff accepted this proposition, and the defendant thereupon took charge of the getting up of the said work, except that the plaintiff furnished him the necessary manuscript of the same as aforesaid, and the defendant made and printed the necessary stock of the said work, or as many copies thereof as he deemed necessary. The defendant, on December 30, 1871, entered upon his duties as agent under the said agreement, and has since then been, and at the

commencement of this action was, acting as such sole agent of the plaintiff for the sale of the work, rendering to the plaintiff accounts of his doings, and charging him with the cost of making and printing the said work from time to time, until it was completed on July 1, 1874.

On July 1, 1874, the defendant had on hand a number of copies of the said work and of parts thereof, and has since then further made and printed a large number of copies of the said work, and has also sold, since then, a considerable number of copies thereof, the quantities of which are unknown to the plaintiff. On account of the copies sold by the defendant since July 1, 1874, he had only paid the plaintiff $2,259.27. The complaint states that the defendant had not paid over to the plaintiff all the money due to him under the said contract for the copies of the said work actually sold by the defendant since July 1, 1874, and that the defendant had neglected to render an account to the plaintiff of the copies sold by him since July 1, 1874, and had refused to pay the plaintiff any further sum of money, although often requested so to do.

The defendant set up several defenses in his answer, which it is unnecessary to consider, as upon the trial he admitted that all the allegations of the complaint were true. No evidence was given, upon the trial, by either party.

The judge found the facts as stated in the complaint, and also that "the plaintiff did not, at any time since the 1st day of July, 1874, require the defendant to print or cause to be printed any copies of said work, nor did he take or offer to pay for any such copies, nor did he demand that the defendant take at the rate of one thousand copies, or any other number, per year."

He ordered that an account be taken of the copies actually sold, &c., but held and decided that the plaintiff was entitled to recover only for the copies of the said work actually sold by the defendant since July 1, 1874, until the commencement of this action, and was not entitled to recover anything in this action under that clause of the said contract by which the defendant was to take on the average at least one thousand copies of the entire work annually from its completion. An interlocutory judgment was rendered accordingly. The judge refused to find and rule that his decision and

the said judgment be without prejudice to the rights of the plaintiff to sue for damages under the said clause of the said agreement.

*Edw. Salomon,* for the plaintiff.

*J. A. Gross,* for the defendant.

BARRETT, J. :

·I am unable to concur with my brother BRADY. The plaintiff, it is conceded, has a right to an accounting. If such accounting shows that the defendant has sold, in each year, more than one thousand copies of the work, there will, of course, be no difficulty. · But if less, there seems to me to be no good reason why the controversy should not be ended at once by charging the defendant with the full one thousand copies which he has agreed to take. By the oral agreement, he became, not only the sole agent, but the printer. It was his business to supply the market. He was to print all that was necessary, but, at all events, to take on an average at least one thousand copies annually. It is not a·question of damages for the breach of the contract, but of the right to charge the defendant with the full one thousand copies *as an incident to the accounting.*

This, it seems to me, was the plaintiff's clear right, flowing from the contract. He was not required to request the defendant to print the one thousand copies, nor was he bound to make any demand or tender. The contract was plain both in letter and spirit. The defendant thereby said in substance : " I will (no matter how few volumes may actually be disposed of after the completion of the work) charge myself with one thousand copies annually, and account to you as though that number had actually been sold." There is no practical difficulty in *here* applying these conclusions. The court has full jurisdiction of the subject and can give complete relief. This was always the rule in courts of equity. To illustrate. If A. agrees to give B. five per cent. of the profits of his business, guaranteeing, however, $1,000 per annum, and B. sues A. for an accounting, will it be said that a court of equity, on finding that the five per cent. amounted to but $900, cannot grant B. the guaranteed $1,000 ? Here, the case is stronger, because the defendant is only responsible for *an average* of one thousand copies

annually. Suppose one year the sales exceeded one thousand copies, another year amounted to just that number, and a third year, to less. Can it be possible that a court of equity will limit the accounting to the actual sales, and drive the plaintiff to a common law action to recover for the average one thousand copies, less those accounted for in the equity suit? Such a course would not have been adopted under the chancery system. Still less should it be where law and equity are blended. For these reasons, I think there should be a new trial. I think, too, that there was error *in the findings*, in not strictly and literally following the complaint. No testimony was introduced, and the case was tried solely upon an admission that the allegations of the amended complaint were true. There should, therefore, have been no deviation from these allegations, either affirmatively or negatively.

The motion for a new trial should be granted, with costs.

DAVIS, P. J., concurred in the views of BARRETT, J.

BRADY, J., dissenting:

This is an action in equity for an accounting, and other relief growing out of a written agreement between the parties, and a subsequent oral agreement in relation thereto. By the written agreement, the defendant, as the plaintiff's agent, agreed to take an average of one thousand copies of the work to which it referred each year after its completion, great financial disturbances, and national calamities excepted. The entire work consisted of eleven volumes of eight hundred pages each. The oral contract changed the terms of the written contract, and by it the defendant became the printer of the work, and was to furnish the stock necessary at variable rates, the plaintiff being required only to furnish the manuscript, and plates ready to be printed from.

The complaint, which is somewhat *in extenso*, contained all the necessary allegations to warrant an accounting for the period for which it was demanded. The defendant had become the printer of the work, and the plaintiff was not advised of the number of copies of the work on hand, that is, printed, or the number of copies sold, to which he was clearly entitled, and in reference to

which the judgment at special term is in his favor. The plaintiff demanded, however, by the prayer of his complaint, that if the copies of the work sold exceeded one thousand annually since July 1, 1874, or if the copies sold were less than one thousand annually, that the defendant be adjudged to pay the plaintiff for one thousand copies annually, at the rate agreed upon. As suggested, the Special Term determined that the plaintiff was entitled to the accounting from July 1, 1874, which was the limit of the plaintiff's claim on that subject, but declined to make any award for any other claim arising upon the contract for any non-performance of it on the part of the defendant.

The decision of the Special Term in reference to them is as follows: "That the plaintiff is entitled to recover in this action only for copies of said work actually sold by said defendant since July 1, 1874, until the commencement of this action, and that he is not entitled to recover anything in this action, under that clause of the contract by which he was to take on an average at least one thousand copies of the entire work annually."

The plaintiff complains of this view, however, and insists that the court having acquired jurisdiction of the whole subject, should investigate the damages in this action, and that such a course should have been adopted by the court, in disposing of his rights; and that if that view is incorrect, the judgment should be so far modified as to declare that the remedy granted in this action should be without prejudice to an action at law for any damages sustained by him in consequence of the failure of the defendant to discharge his obligations thereunder. The case appears to have been treated as one for an accounting, not only by the learned justice who presided at the trial, but by Mr. Justice VAN VORST when it was considered under the original complaint on a demurrer interposed by the defendant. As such an action it must be regarded as affecting the defendant's responsibility under the contracts, only for the money due for the copies taken or sold by him since July 1874, which is the precise relief granted by the interlocutory judgment.

As an action at law involving the question of damages, to which a court of equity might continue its jurisdiction, the complaint is imperfect, because it does not appear from any allegation in it that

HUN.—XXI.                    15

the defendant has not taken the number of copies which, under the terms of the contract, he was compelled to accept: and without showing by positive averment that he had refused to take the required number of copies, the plaintiff would be in no condition to insist upon any relief in that respect. That this is so, is apparent from the allegation in the complaint that the plaintiff did not know the exact number of copies held by the defendant, nor the number of copies made and printed, nor the actual number sold by him. His right of action must therefore necessarily depend upon the result of the accounting, by which the number of copies taken by the defendant will be demonstrated, and it will then appear whether he has performed the contract on his part or not. The result of the accounting may show that the plaintiff has a *prima facie* cause of action against the defendant for a failure to perform the contract in the respect suggested. And if an action should be brought, the question of liability arising from any and all causes, and the defenses, if any, can be properly considered.

I think that the learned judge in the court below entertained this view, from the language of the finding referred to, which declared that the plaintiff was not entitled to recover *in this action* for the violation considered.

Entertaining these views, it follows as a necessary legal sequence that this action was in its form and proofs one for an accounting purely, and did not involve any question of damages arising from non-performance, and therefore that the plaintiff's right to recover for any such violation is not in any way affected or interfered with by the interlocutory judgment entered herein.

I think the motion should be denied, with $10 costs and disbursements.

Motion for a new trial granted with costs.